UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HOWARD W. COSBY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:21-cv-1491 (KAD) |
| | : | |
| BUCIOR, | : | |
| Defendant. | : | |

**INITIAL REVIEW ORDER**

Plaintiff, Howard W. Cosby ("Cosby"), a prisoner currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, brings this civil rights action pursuant to 42 U.S.C. § 1983 against one defendant, Correctional Officer Bucior.  He alleges that Officer Bucior failed to protect him from an assault by another inmate.  Cosby seeks damages from the defendant in his individual capacity and injunctive relief in his official capacity. For the following reasons, the Complaint is dismissed in part.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se*

litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

On October 11, 2021, Cosby was in his cell located about ten feet from the officers' station. Doc. No. 1 at 6, 11.[1] Inmate Whittington repeatedly turned on the light in Cosby's cell from the outside while yelling "Die, Cosby." *Id.* at 6. The following day, during afternoon recreation, Whittington continued to harass and intimidate Cosby and again turned on the light in Cosby's cell and called Cosby a rapist. *Id.* Cosby yelled at Whittington to stop while Officer Bucior listened and watched from the officers' station but did not intervene. *Id.*

As Officer Bucior watched, Whittington returned to Cosby's cell, turned on the light, entered the cell, and yelled that he was going to kill Cosby. *Id.* Cosby feared for his life and called to Officer Bucior for help but was ignored. *Id.* Cosby yelled to Whittington to stop and to leave his cell, but Whittington would not listen. *Id.* at 7. Whittington continued to "occupy" the cell door and kept yelling that he was going to kill Cosby. *Id.* Cosby smelled alcohol on Whittington's breath and believed that Whittington would carry out his threats. *Id.* Officer Bucior continued to watch and did not intervene. *Id.*

---

[1] Because of the document's format, all page numbers referencing the Complaint, Doc. No. 1, refer to the page number assigned by the CM/ECF docketing system.

Because Whittington would not listen to reason, Cosby "threw a single punch in front of his face, hoping that it would scare him away." *Id.* Instead, Whittington attacked Cosby in the cell. *Id.* Officer Bucior continued to watch and do nothing; he did not even call a code. *Id.* Cosby restrained Whittington in a "head-lock" while yelling to Officer Bucior for assistance and to Whittington to stop. *Id.* Officer Bucior just smiled and put his head down. *Id.* At one point Whittington grabbed Cosby's testicles causing Cosby to bite him to make him stop. *Id.*

Cosby believed that Officer Bucior would do nothing while the altercation was confined to Cosby's cell and out of range of the surveillance camera. *Id.* at 8. Cosby pushed Whittington out of the cell but because his left foot is disabled, he lost his balance and fell to the floor with Whittington. *Id.* Whittington eventually broke free of Cosby's restraints and continued to act in a hostile manner. *Id.* Cosby continued to defend himself but was unable to get up without his disability aides. *Id.* Cosby tried to crawl away, but Whittington followed and punched Cosby in the back of his head several times. *Id.* at 9. Officer Bucior called a code once Cosby was on the floor with Whittington. *Id.* Other officers arrived and pulled Whittington off Cosby. *Id.*

 Cosby has left foot drop from a previous gunshot injury. His left foot does not flex or rotate. His toes always point down, and he cannot grip the floor. *Id.* at 8. Cosby also has degenerative disc disease, bad knees, a bladder disorder and high blood pressure. *Id.* at 10. He is assigned a handicap cell near the officer station. *Id.* at 11. Cosby requires orthopedic shoes and a foot brace, knee braces, a cane, and a wheelchair. *Id.* at 10. Cosby suffered injuries to his head, left eye, left foot and ankle, right shoulder, back, and right ear. *Id.* at 9. He now has a hearing impairment. *Id.* Cosby also suffers from PTSD and anxiety disorder and was in a state of panic during the incident. *Id.* at 10.

3

Cosby received a disciplinary report for fighting.  *Id.* at 15.  He pleaded guilty to the

charge under duress and received sanctions including disciplinary confinement and loss of "good

time." *Id.*

**Discussion**

Cosby asserts Eighth Amendment claims for Bucior's failure to protect him from the

assault by Whittington as well as deliberate indifference to his medical needs. He also appears to

assert state law claims for negligence and violation of the state constitutional right to be free

from cruel and unusual punishment.[2]

**Failure to Protect**

Cosby contends that Officer Bucior failed to protect him from the assault by Whittington.

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners."

*Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (alterations and quotations omitted). *See also*

*Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) (discussing the duty to protect).  However,

"not . . . every injury suffered by one prisoner at the hands of another ... translates into

constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S.

at 834.  A claim that a correctional officer failed to protect an inmate from attack rises to the

level of a constitutional violation only when the officer acted with "'deliberate indifference' to a

---

[2] The Court limits its review for purposes of 28 U.S.C. § 1915A to Cosby's federal law claims because the purpose of an initial review order is to conduct a prompt initial screening to determine whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants.  If there are no facially plausible federal law claims against the named defendant, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.  On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims against the defendant may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment.  More generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the Court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

substantial risk of serious harm to an inmate." *Id.* at 828 (citations omitted).  Deliberate

indifference exists where prison officials know of and disregard an excessive risk to inmate

safety.  *See id.* at 837; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010)

(explaining that the defendants must be aware of facts supporting an inference that harm would

occur and must actually draw that inference).  The court makes this determination, not in

hindsight, but considering the "facts and circumstances of which the official was aware at the

time he acted or failed to act."  *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y.

2010) (quotation omitted).

Cosby was assaulted by another inmate and suffered injuries.  Thus, for purposes of

initial review, the Court assumes that Whittington posed an excessive risk to Cosby's safety. The

question then is whether Officer Bucior was aware of and disregarded that risk.

Cosby alleges that Officer Bucior was in the officer's station about ten feet from his cell.

He called repeatedly to Officer Bucior for assistance both before and after the assault started.

Cosby alleges that Officer Bucior merely smiled and watched the incident.  He took no action

until the inmates were in view of the surveillance camera.  These allegations are sufficient to

state a plausible claim that Officer Bucior was aware of, and disregarded, the risk to Cosby's

safety.  The failure to protect claim will proceed. *See Thawney v. City of New York*, No. 17 Civ.

1881 (PAE), 2018 WL 49356844, at *4 (S.D.N.Y. 2018) ("It is well established that an officer

acts with deliberate indifference if he is aware of an attack, has an opportunity to protect the

inmate, and does not intervene.") (citing, among other cases, *Rosen v. City of New York*, 667 F.

Supp. 2d 355, 359 (S.D.N.Y. 2009)).

**Deliberate Indifference to Medical Needs**

Although Cosby includes a claim for deliberate indifference to his medical needs, he does not name anyone responsible for providing his medical care as a defendant.  The only allegations regarding medical care are that Correctional Officer Walker falsely stated that Cosby refused x-rays; that Cosby reported this to Nurse Caroline who reinstated the order, and that as yet, no x-rays have been taken.  Doc. No. 1 at 17.   If his claim is that Officer Bucior ignored his various medical needs when he failed to intervene to protect Cosby, that claim would be included in the failure to protect claim considered above.  As Cosby has alleged no facts supporting a claim for deliberate indifference to his medical needs against Officer Bucior, the only defendant, this claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Further, the Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies *before* a court may hear his case. *See* 42 U.S.C. § 1997e(a) (providing in pertinent part that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016) (discussing the exhaustion requirement under the PLRA).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Attached to the Complaint are documents purporting to show that Cosby exhausted his administrative remedies with respect to the claims asserted in this action.  However, the only issue reflected in the documents relate to Bucior's failure to protect him from the assault by

Whittington.  Thus, it does not appear that Cosby exhausted his administrative remedies with respect to the claim that Bucior was deliberately indifferent to his medical needs.  Although failure to exhaust administrative remedies is an affirmative defense on which the defendant bears the burden of proof, the district court may dismiss a complaint for failure to exhaust administrative remedies where the failure appears on the face of the complaint.  *See Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints. . . . However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement.") (quotations and citations omitted).  As exhaustion of administrative remedies is mandatory, the deliberate indifference to medical needs claim is dismissed for this reason as well.

**Orders**

The federal claim for deliberate indifference to medical needs is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  The case will proceed on the Eighth Amendment claim for failure to protect Cosby from the assault by Whittington as well as the supplemental state law claims.

The Court enters the following additional orders.

(1)    **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain Officer Bucior's current work address mail a waiver of service of process request packet containing the Complaint and this Order to him at that address by **December 21, 2021**, and report to the court on the status of the waiver requests on the thirty-fifth day after mailing.  If the Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person

service by the U.S. Marshals Service on the Defendant in his individual capacity and the
Defendant shall be required to pay the cost of such service.

(2)     **The Clerk shall** prepare a summons form and send an official capacity service
packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the
Amended Complaint and this Order on Officer Bucior in his official capacity at the Office of the
Attorney General, 165 Capitol Avenue, Hartford, CT 06106, by **December 21, 2021** and to file a
return of service by **December 30, 2021.**

(3)     T**he Clerk shall** send the Plaintiff a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the
Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The Defendant shall file his response to the Complaint, either an answer or
motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If he chooses
to file an answer, he shall admit or deny the allegations and respond to the cognizable claim
recited above.  He also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be
completed by **June 30, 2022**.  Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed by **July 30, 2022**.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a
dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response
is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If the Plaintiff changes his address at any time during the litigation of this case,
Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in

8

the dismissal of the case. The Plaintiff must give notice of a new address even if he is incarcerated. The Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. The Plaintiff should also notify the Defendant or the attorney for the Defendant of his new address.

(10)    The Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendant's counsel by regular mail.

(11)    The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the Plaintiff.

**SO ORDERED** this 30th day of November 2021 at Bridgeport, Connecticut.

  /s/
Kari A. Dooley
United States District Judge

9